49 CCPA
**Application of Ellen Louise SHOOK.**
**Patent Appeal No. 6782.**

United States Court of Customs and Patent Appeals.
May 4, 1962.

Watson, Cole, Grindle & Watson, Willis L. Vary, Washington, D. C., for appellant.

Clarence W. Moore, Washington, D. C. (S. Wm. Cochran and Jere W. Sears, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

SMITH, Judge.

This is an appeal from the rejection by the Patent Office Board of Appeals of claims 2, 3, 5, 6, 7, 8 and 10 of appellant's U. S. application serial number 509,457, filed May 19, 1955 for a patent on a "Bridge Playing Device." The references relied upon by the board are:

| | | |
|---|---|---|
| Wilks (British) | 535,269 | Apr. 3, 1941 |
| Middlebrook | 2,296,113 | Sept. 15, 1942 |

The preferred embodiment of appellant's invention as disclosed in said application comprises a deck of playing cards which is a conventional deck except for having certain indicia printed on the back of each card plus supplementary cards called "guide cards." The purpose of such a deck is to facilitate the dealing of prearranged bridge hands, as in duplicate bridge games as well as to facilitate teaching bridge. The deck permits the ready distribution or dealing of a number of prearranged bridge hands in the manner indicated by the indicia on the back of each playing card. After distribution, the cards are played in the normal manner of playing bridge. The guide cards are used to indicate the proper bid and order[1] in which each hand should be bid and played.

The faces of the playing cards are conventional. Printed on the backs are certain indicia consisting of numbers and letters which indicate to which player that particular card should be dealt. In one embodiment, the letter and number indicia are arranged in four vertical columns, each column heading indicating the status of vulnerability for the hands

thereunder. Thus, in a first column under "NONE," the first pair of indicia is "D1." This would mean that for the first prearranged hand, as indicated by the number "1," neither side is vulnerable, and the card upon which these indicia are imprinted is to be dealt to the player designated as dealer, as indicated by the letter "D." Each of the fifty-two playing cards contains similar indicia, with each player designated as A, B, C, or D, proceeding counter-clockwise from the dealer's left. To further illustrate, the fourth column, headed "BOTH," contains the pair of indicia "B4" which indicates that for the fourth prearranged hand, both sides are vulnerable and the card is to be dealt to player B, who is the partner of dealer D.

For each prearranged hand, applicant provides four guide cards, one for each player. These cards are to be used as guides in the proper bidding and playing of the prearranged hands and are not playing cards themselves. Each guide card indicates to each player the proper bid and order of bidding and order of playing of his cards

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of

Section 294(d), Title 28 United States Code.

1. The proper order or sequence of bid or play means the order or sequence which would be used by an expert bridge player.

Another feature of applicant's invention is a "card aligning symbol" which appears *on the face* of each playing card. This symbol, a dot or other mark, appears in an upper corner of the card face when the card is properly orientated so that the indicia on the backs are orientated for reading. When the cards are played, face up, the player winning the trick aligns the four cards by means of a card aligning symbol, so that when the cards in all tricks are similarly aligned, the dealer merely aligns all the tricks and the cards will be properly aligned for the dealer to read the indicia on the backs without requiring further rearrangement of the cards.

Claim 2, representative of the claims on appeal, is as follows:

"A device for presenting a plurality of prearranged bridge hands comprising a deck of playing cards, the back of each individual card containing a series of paired indicia denoting the manner of dealing the cards, one of said indicia denoting a particular prearranged hand and the other of said indicia denoting the player to whom the card is to be dealt, and means for denoting the status of vulnerability of each prearranged hand whereby, upon dealing the cards into four groups according to the indicia a prearranged bridge hand is presented."

Claim 3 is narrower than claim 2, supra, in that it calls for four columns of paired indicia on the back of each card. Claim 5 claims the deck of playing cards with the paired indicia as recited in claims 2 and 3 and adds the card aligning symbol. Claim 6 recites the paired indicia, "means for denoting the status of vulnerability of each hand," and the card aligning symbol.

Claim 7 recites the playing cards with paired indicia and "a plurality of separate guide cards" which denote the playing cards to be held in each prearranged hand and also the order of bidding said hand. Claim 8 claims *in combination* the playing cards with paired indicia and the plurality of guide cards. Claim 10 claims the playing cards with paired indicia, the means for denoting the vulnerability status for each prearranged hand, and a numeral below each pair of indicia on the playing cards denoting the proper order of play for that card.

The Middlebrook patent, relied upon by the board, discloses a deck of playing cards with printed indicia on the backs. The specification states:

"This invention relates to playing cards and, more particularly, to playing cards to be used for playing contract bridge, duplicate contract bridge, whist or like games."

Middlebrook's indicia, in the embodiment shown in figure 3, denote the status of vulnerability for each hand, which player is to be dealer and to which player each card is to be dealt for that particular hand. This is clear from the specification which states:

"A still further object of this invention is to provide a playing card on which the vulnerability of the various players on each hand of a series of hands to be played is permanently indicated and on which each player may mark by a removable mark his position when a card is dealt to him so that the card on a subsequent deal may be dealt to that same position and played by another player after the players have changed positions, the mark being removable thereafter.

\* \* \* \* \* \*

"Each area is numbered at *r*. A letter is imprinted adjacent the number at *s* [2] the letter indicating one of the four positions, North, South, East or West, the position to which the card is to be dealt in the hand corresponding to the adjacent number. *These letters may be either permanently or removably imprinted on the card."* [Emphasis added.]

The Wilks reference discloses a series of guide or "deal cards" which are to be

---

2. It appears that this letter should be "F," to correspond with Middlebrook's figure 3.

used with four decks of regular playing cards to deal prearranged bridge hands. The deal cards indicate the status of vulnerability for each hand, which player is to be dealer and which cards are to be held by each player.

In its affirmance of the examiner's rejection the board stated that "the examiner was correct in refusing to allow the claims for the reasons he stated" and that:

"The examiner's position is fully and clearly set forth in his answer. After due consideration to the arguments presented in the brief and presented by appellant at the oral hearing, we are of the opinion that the examiner was correct in refusing to allow the claims for the reasons he stated.

"The arrangement of printed matter or indicia as disclosed and claimed by appellant is advantageous in distributing cards for playing duplicate bridge or for instructing beginners. However, the fundamental concept as claimed by appellant is disclosed in the patents to Middlebrook and Wilks."

The examiner's answer states that "claim 2 is under rejection as fully met by Middlebrook."

In arguing that this rejection on Middlebrook should be reversed, appellant asserts that the claim sets forth in substance a new and unobvious relationship between the indicia and the cards, not shown in Middlebrook. Her argument is based on the idea that Middlebrook's invention cannot be used for prearranged bridge hands, since his cards are not marked to indicate to which player they are to be dealt until after the first hand has been dealt. It is appellant's position that her cards are especially useful in teaching bridge, since the hands are prearranged and so marked by the manufacturer (under the guidance of a bridge expert) while Middlebrook's cards are useful only in playing duplicate bridge, since the hands are not prearranged by an expert but are prearranged only after the cards have been dealt at random and are marked by the players receiving them.

We do not agree that Middlebrook's invention is so limited. While Middlebrook states that his cards may be used in playing duplicate bridge wherein each player marks his cards after he receives them, the patentee also states that the marks "may be either *permanently* or removably imprinted on the cards." [Emphasis added.] Claim 2, quoted supra, broadly claims "a series of paired indicia" and "means for denoting the status of vulnerability." We think that the examiner and board were correct in rejecting this claim as "fully met" by Middlebrook, since the reference clearly discloses the "series of paired indicia" denoting the player and hand relationship and the "means for denoting the status of vulnerability. Since it is clear that Middlebrook also contemplated permanent imprinting of his indicia for hands prearranged prior to the first deal as stated above, the rejection of claim 2 is affirmed.

The examiner's answer also rejects claims 3, 5, 6 and 10, as "unpatentable over Middlebrook." Claim 3 differs from the reference by defining the indicia denoting the vulnerability status of the player positions as a "heading" above the columns of paired indicia. Since the reference discloses such indicia, the arrangement thereof into columns below an appropriate heading is not patentable. We agree with the examiner's statement that:

"* * * In any case, it is believed that no unobvious result would be produced by applicant's particular arrangement of printed matter."

Claims 5 and 6 call for applicant's "card-aligning symbol" which we think is at best but an obvious addition to the cards of Middlebrook.

Claim 10 calls for a numeral below each pair of indicia denoting the order in which the card is to be played. The examiner stated that this feature "is not considered patentably significant" with which we agree. Indicating the proper sequence of play for a bridge hand

is such a commonly used expedient, that we think it would be obvious to one of ordinary skill in the art to imprint the proper sequence indicia on the cards themselves. We therefore affirm the rejection of claims 3, 5, 6 and 10.

The board affirmed the examiner's rejection of claims 7 and 8 as "unpatentable over Wilks." As noted, supra, Wilks discloses a set of "deal cards" to be used with regular playing cards. These "deal cards" contain all of the indicia indicating vulnerability status, which cards are to be held by each player in each prearranged hand, and which player is to be designated as dealer. The specification also discloses:

"For beginners, deal cards may also state what bidding each player should make, the final declaration, and which card should be played at any trick."

The sole distinction of appellant's invention as defined in claims 7 and 8 over Wilks is that appellant has transferred from the guide or "deal cards" to the backs of the playing cards, the paired indicia indicating to which player the card shall be dealt in each prearranged hand. The examiner and board did not think this distinction was of "patentable significance." We think this conclusion is correct.

Although Wilks discloses that his "deal cards" can be used with four decks of ordinary playing cards, he does consider it desirable that the playing cards be marked to distinguish one player's cards from another's. It seems to us that it would be obvious to one of ordinary skill in the art to further mark the playing cards of Wilks to indicate to which player they shall be dealt in each hand if it was desired to distribute the cards by reference to these marks on each card, rather than by reference to the "deal cards" alone. Wilks, in combining his deal cards with ordinary playing cards, has every feature of appellant's claimed combination of marked playing cards and deal cards, except the marking on the playing cards. Marking the playing cards themselves to indicate to whom they belong or are to be dealt is a concept well-known at the time of appellant's invention, as shown by both Wilks and Middlebrook. Although the board and examiner did not base the rejection of claims 7 and 8 on the Middlebrook patent, it shows the state of the art at the time the invention was made. The allegedly novel features called for in claims 7 and 8, would in our opinion have been obvious to one of ordinary skill in the art at the time the invention was made.

The board stated that the variations of appellant's invention over the prior art resided only in the arrangement of the printed indicia and that such variations of printed matter "are without patentable significance." Appellant asserts that the variations in printed matter present in her invention present new relations of printed matter to structure which is patentable.

We think, however, that as was said by this court in In re Sterling, 21 CCPA 1134, 70 F.2d 910,

"The general physical structure of appellant is admittedly old, and such modifications in the adjustment of printed matter thereto as he discloses are mere obvious arrangements of the printing."

Appellant, to prevail, must show that her invention is both novel and unobvious. 35 U.S.C. §§ 101, 103. The board and examiner correctly held that the subject matter of appellant's claim 2 was old and anticipated by Middlebrook and that of the other claims was obvious in view of the prior art references cited. For the foregoing reasons, the decision of the board is affirmed.

Affirmed.

MARTIN, J., sat but did not participate because of illness.